WINCH, J.
This is an action to enjoin the defendant from enforcing a forfeiture of a 99-year lease to certain premises in the city of Cleveland and from taking possesion of the demised premises.
The defendants claim forfeiture of the lease on several grounds, but only one of them need be examined and that is the failure of the plaintiff to erect a new building upon the premises within the first ten years of the term of the lease.
Upon this subject the parties, by the indenture of lease, covenanted as follows:
‘1 And it is further mutually agreed and understood between the said lessor and the said lessees that said lessees shall have and are hereby granted the right and privilege at any time they see fit to repair or remodel the building and improvements now upon said premises at their own expense, provided, however, that said changes, 'remodeling and improvements on said land shall not impair or lessen the present value of the buildings and improvements now thereon. And said lessees shall have and are hereby granted the right and privilege at any time they may see fit to remove or destroy the buildings and improvements now upon said premises, or any part thereof, but only on condition that said lessees will proceed without delay thereafter to erect in their place and stead and at their own expense a new building or buildings and improvements upon said premises, to cost not less than one hundred and fifty thousand dollars ($150,000). Provided, however, that said lessees shall not exercise such right without having first obtained the lessor’s consent in writing for the removal of said buildings or any part thereof, and furnishing and delivering to the said lessor a good and sufficient bond to said lessor’s satisfaction to secure the erection of a new building or buildings and improvements on said land to cost not less than one hundred and fifty thousand dollars ($150,000).
‘! But in case the lessees shall fail to erect a first class, modern building not less than eight stories in height upon said premises costing not less than one hundred and fifty thousand dollars by or before the expiration of said first period of ten years, i. e., by or before October 1st, 1913, it shall then be optional with the lessor to terminate this lease at that time by giving written notice to said lessees of his election so to do, or to continue the same in force without regard to the erection of such new buildings. If this lease shall be terminated by the election of said lessor on or before October 1st, 1913, on account of the failure of said lessees *718 to erect new building and improvements upon said premises before said date at a cost of not less than $150,000 as aforesaid, then and in that event all the buildings and improvements upon said premises shall revert to and remain the property of the lessor without compensation therefor to said lessees.1 ’
It is conceded not only that the old buildings have not been torn down and new buildings erected, but that the ten-year period elapsed without the lessees requesting the lessor’s consent to the removal of the old buildings, without tender of any bond to secure the erection of new buildings and without any intention on the part of the lessees to construct new buildings during said ten-year period or thereafter, either conceived by the lessees or communicated to the lessor.
The lessees’ claim is that the lease is to be construed as granting the lessees the privilege of tearing down the old buildings and erecting new buildings at any time during the 99 years of the lease, but that it does not require them to do so and that the second paragraph quoted from the lease is repugnant to the first paragraph and can only be harmonized with the first paragraph by limiting its application to the contingency only that if, during the first ten years the lessees should elect to erect new buildings, should obtain the lessor’s consent to tear down the old buildings, upon giving bond as required, and then having torn down the old buildings should fail to erect new buildings within the first ten-year period, then the lessor might exercise the option reserved to terminate the lease.
This claim is hard to understand and difficult to express in words. It is so forced that recourse to plaintiff’s brief must be had to obtain any conception of it.
In said brief it is expressed as follows:
“It is clear that a clause allowing lessor (lessees) to build at his (their) option at any time during a period of 99 years is so entirely repugnant to a clause which requires him (them) to build within 10 years, on terms to be dictated by the lessor, that neither law nor equity will enforce a construction so detrimental to the rights of the lessee. ’ ’
In this sentence, as indicated, counsel confuse the words lessor and lessees, but the brief goes on to say:
*719 “ While it is dear that the two clauses are too repugnant to allow a forfeiture, the claim of plaintiff is that they may be so construed as to fairly and equitably protect the rights of both the lessor and the lessees.
‘ ‘ The lease clearly gives the lessee a privilege to build, at his option as to time, but only on condition that before tearing down give bond to lessor’s satisfaction to proceed with the new buildings. Then follows the clause relied on by defendant, stating that if lessee fails to erect such building within ten years, the lessor may elect to terminate the lease.
“This clause may be entirely harmonized with the former clause, giving the option to build to lessee, if we simply interpolate the words, ‘after lessee has so elected to build and given bond therefor,’ immediately following the words ‘October 1, 1913.’
‘ ‘ This interpretation* is entirely reasonable and absolutely equitable in that it still gives the lessee the option to build as stated in the lease, and yet gives the lessor, in addition to the bond, a further security and a different remedy to be exercised at his option, during the first ten year period of said 99 year term.”
This insertion of words, the parties never though of adding to their contract, may be “entirely reasonable and absolutely equitable” in the minds of the lessees, but is it what the lessor intended when he drafted the lease and the lessees assented to when they accepted it as drafted ? If it is not, the court cannot make a new agreement for the parties, nor will it hold the two clauses of the lease repugnant and the forfeiture therefore unenforceable, unless they are clearly so.
It is not unusual for a lease to be made for a term of years, but to terminate sooner upon the option of either lessor or lessee either for cause or upon the mere will of the one for whom the option is reserved.
Contracts for employment are made in the same manner, with option to either party to terminate the employment upon giving notice. Contracts for sale or purchase of goods with delivery in installments are made with similar options.
It is, then, not unusual to reserve the right to terminate a contract upon notice and such right when contracted for by the parties, is uniformly enforced by the courts, unless circum *720 stances have arisen before notice is given which should, in equity, prevent the assertion of the right.
The terms of the lease before the court for construction in this ease are not difficult to understand, are a valid and reasonable exercise of the right to contract, and must be construed with a view to effectuate the intention of the parties, if that can be gathered from them. As said by Judge Spear in a case involving the forfeiture of a 99-year lease, Rock v. Monarch Building Co., 87 Ohio St. 244, 252 [100 N. E. 887] :
‘ ‘ Courts are required, by the application of known rules of law, to enforce valid and reasonable contracts of parties, with the view of carrying out their clear intent, rather than, by resort to technical construction, to render such contracts void. ’ ’
In this case both parties agree that: ‘ ‘ The first part of this stipulation clearly gives the lessees the right and privilege to erect a new building or buildings, but does not obligate them to do so, unless they remove or destroy the old buildings. This privilege may be exercised by lessees at amy time they see fit, during the entire period of 99 years.”
Now ás to the second paragraph, the plaintiffs concede that if it stood alone it might be construed as a condition subsequent and so enforceable.
But it does stand alone and the evidence shows that it was drafted by the architect of the lessor and required to be inserted in the lease after the original draft of the lease, without it, had once been approved by the parties, but before signing.
Let us read the second paragraph again and see if it is a “valid and reasonable” provision to insert in a 99-year lease which contains a privilege to the lessee to tear down old buildings and erect new buildings at any time within the term, upon certain conditions:
“But in case the lessees shall fail to erect a first class, modern building not less than eight stories in height upon said premises costing not less than one hundred and fifty thousand dollars by or before the expiration of said first period of ten years, i. e., by or before October 1, 1913, it shall then be optional with the lessor to terminate this lease at that time by giving written notice to said lessees of his election so to do, or to continue the same in force without regard to erection of such new building. ’ ’
*721 This seems clear enough to require no construction. It means what it says: if the lessees fail to erect a new building before October 1, 1913, the lessor may then terminate the lease.
The sentence opens with the word “but,” and much stress is put upon this by both parties, but the meaning of the word in this connection is simple enough. It means, “notwithstanding— yet;” “notwithstanding” I have given you the privilege to erect a new building on the premises at any time you may see fit during the 99 years, “yet,” if you don’t erect a new building during the first ten-year period, I reserve the right to terminate the lease.
This the lessor certainly had a right to do, and his reason for doing it is apparent. Having exacted no security for payment of rent, having made no requirement that new buildings must be erected, he was content to let this arrangement go for ten years, but as the buildings were then old (the evidence shows they were erected in the fifties of the last century), he thought it wise to have ten years in which to make up his mind whether the lease was a safe one to continue without the erection of new buildings on the premises as security for continued payment of rent during the next 89 years.
The ten years went by; the lessees paid no heed to this clause of the lease which was manifestly for the protection of the lessor ; he deemed it wise to exercise the option which the lease reserved to him and having plainly contracted for it, why should this right be denied him?
■ We hold, then, that the option to terminate the lease is valid and reasonable — not repugnant to the privilege granted in the first clause, any more than the further specification in the second clause that the new building shall be “ a first class, modern building not less than eight stories in height” is repugnant to the phrase “new building or buildings and improvements” used in the first clause. The second clause more fully describes the kind of building which the first clause authorizes to be built. That is perfectly proper. The two clauses should be read together and effect given to both. The rules of grammar do not determine the effect to be given to a contract; it is the intention of the parties that is to control. It is reasonable that this should *722 be so, otherwise the school teacher and lawyer would have a monopoly of drawing contracts.
Having found the two clauses of the lease to be harmonious and reconcilable, valid and reasonable, it follows that the lessor had a right to exercise his option to terminate the lease and that the court cannot interfere with this right unless the lessor, by some act of his own prevented the lessees from complying with the condition subsequent, as it has been termed, or waived compliance therewith, or there has been some fraud, accident or mistake on account of which the court ought to relieve against the forfeiture.
There is nothing of the kind in this case, so far as the lessor is concerned. On the other hand, an examination of the record does not commend the conduct of the lessees to a court of equity. They admit they never intended to build and they did many things in an effort to circumvent the lessor in his right to terminate the lease.
Sixty days before October 1, 1913, notice in writing was served on the lessees that it was the intention of the owner of the premises “to take advantage of and exercise the option to terminate said lease on October 1,1913, as provided in the clause or said lease quoted above,” the clause quoted being the one in question.
Then the lessees got busy, not in an effort to obtain the lessor’s written consent to the erection of a new building and extension of time in which to complete it, but in the invention of traps and subterfuges in order to bewilder the lessor and prevent his exercising his option, through the interposition of technicalities.
The lease provided, among other things:
“All notices to be observed hereunder upon said lessees shall be served by leaving them at their offices upon said premises.”
The notice of intention to terminate the lease should have been served at such office, if they had one, upon the premises, but the lessees sublet the entire premises and never maintained any office there. They received the written sixty-day notice and then delayed until September 27, 1913, which was a Saturday and only three days before October 1, when they put of record *723 an assignment of their lease to the Koblitz Bros. Realty Co., of which company the lessees owned all the stock except four qualifying shares held by members of their families, who served as directors of their realty company. They gave no notice of this assignment to the lessor.
The Koblitz Bros. Realty Co. also pretended to open an office “on the premises,” by arranging for the use of a table in a restaurant in the building when the table was not in use at meal times and hanging a cardboard sign with the name of the company on it on a clothes rack in the dining room and pasting a typewritten notice on a small piece of paper in a window of a restaurant over which hung a lace curtain. Of these steps they gave the lessor no notice, and so when the lessor, on September 29, 1913, gave his final written notice that he thereby elected to terminate the lease and requested that the premises be vacated by October 1st, he gave it to the original lessees and not to their assignee, the Koblitz Bros. Realty Co.
These facts are related to show that the plaintiffs do not by. their conduct commend themselves to a court of equity, which is interested in substantial claims and disregards technicalities, but their relation does not require a consideration of whether the notice to forfeit was regularly given, for plaintiffs concede that they had actual notice thereof and are bound thereby, and it is a rule that “after notice has been properly given by the landlord, it binds all who come into possession subsequently under the tenant. ’ ’
Captious objection is also made by the lessees to the fact that the notices of termination of the lease were given by an employee of the owner, not shown to be qualified to act so as to bind the owner. Such objection comes from the wrong side. The owner adopted the act of the employee and stands by it.
The conclusion is that defendants, were wholly within their rights in declaring the lease terminated and in taking possession of the demised premises on October 1, 1913, and that plaintiffs petition for an injunction must be dismissed.
Such results as this are sometimes reached with reluctance, where forfeitures are involved. It is one ®f the functions of a court of equity to relieve against forfeitures, but that is because *724 forfeitures frequently result in hardships to the innocent or unfortunate. Plaintiffs are neither innocent nor unfortunate, nor is there any hardships here involved. The lessees brought themselves deliberately into their present situation by disregarding the plain terms of their lease; they never intended or desired to rebuild on the premises; they never invested any money in the property which they haven’t received back; what repairs they made have been fully repaid to them by sub-tenants and every year of the ten they were in possession of another man’s property, they made a handsome profit out of it. The record shows the rent reserved under the lease was $6,000, and the income of the lessees from the property was over $10,000; out of this they paid the rent, taxes, insurance and repairs and put a comfortable profit into their own pockets. Their gold mine has slipped from their grasp, but through no fault of the owner thereof.
The petition is dismissed and judgment is rendered for the defendants. What affirmative relief defendants ask we do not know, for it appears from the transcript that they filed an amended answer but it is not in the files. Whether said amended answer prays such relief as can be granted in this action and in this court, we were not advised on the argument, and that matter will be taken up when we come to the settlement of the journal entry.
Meals and Grant, JJ.